IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| **JASON HEWETT,** individually and on behalf of all others similarly situated, *Plaintiff*, v. **INNOVATIVE TAX RELIEF LLC** *Defendant.* | Case No. **CLASS ACTION** **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Jason Hewett ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Innovative Tax Relief LLC ("Defendant") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

1

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Defendant violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent, together with violations of North Carolina Law.

## PARTIES

4. Plaintiff is an individual residing in Columbus County, North Carolina.

5. Defendant is a Palm Beach County, Florida based company that sells services to assist with taxes and debt relief.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over Plaintiff's state law claims.

7. This Court has specific personal jurisdiction over Defendant because the company directed its conduct into this District, including by texting 910- area code numbers, which are associated with this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the complaint, namely, the illegal telemarketing conduct, took place in this District because the calls and text messages were sent into this District to a 910- area code number.

## BACKGROUND

**A.  The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

9. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.  The NCTSA Also Prohibits Calls to Numbers on the national Do Not Call Registry.**

13. Recognizing the particular harm that illegal telemarketing does to both residents of North Carolina and recognizing the particular harm that North Carolina-based bad actors have on the reputation of North Carolina as a state and against the public interest, the North Carolina General Assembly passed the North Carolina Telephone Solicitations Act in 2003 and codified it at N.C. GEN STAT. § 75-100.

14. Damages under the NCTSA are set by statute at $500 for the first violation, $1,000 for the second violation, and $5,000 for the third and subsequent violation, in addition to injunctive relief and attorney's fees and costs. N.C. GEN STAT. § 75-105.

15. Of relevance here, the NCTSA makes it a predicate offense to make a "telephone solicitation," which is defined as a "voice or text communication," to a telephone subscriber's number if the number appears in the latest edition of the "Do Not Call" Registry. N.C. GEN STAT. § 75-102(a).

## FACTUAL ALLEGATIONS

16. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendant prior to receiving the calls at issue.

18. Plaintiff's telephone number, (910) XXX-XXXX, is a residential, non-commercial telephone number.

19. Plaintiff uses the number for personal, residential, and household reasons.

20. Plaintiff does not use the number for business reasons or business use.

21. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

22. Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

23. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there over a year prior to the calls at issue.

24. Plaintiff has never been a customer of Defendant.

25. Despite that fact, the Plaintiff received three text messages from Defendant: one on April 15, 2025 and two on April 25, 2025 from number "20763."

26. The content of the text messages indicated they were from a company called "Fresh Start."

27. On May 8, 2025, Plaintiff responded to the text messages asking if the company had a website.

28. The text messages are shown below:





29. After asking for Defendant's website, Plaintiff then immediately received a call from (980) 387-1627.

30. Immediately after, Plaintiff received a follow-up text from (561) 247-0232 with a link to Defendant's website

31. The website was https://www.innovativetaxreliefllc.com.

32. The text message is shown below:



33. Plaintiff responded "stop."

34. That same day, Plaintiff received several calls from (561) 247-0232 despite telling Defendant to stop.

35. Defendant's communications were to market and sell tax and debt relief services to Plaintiff.

36. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

37. The calls were unwanted.

38. The calls were nonconsensual encounters.

39. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

40. Plaintiff never provided his consent or requested the calls.

41. Plaintiff and the Classes have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

42. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

43. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant encouraging the purchase of Defendant's goods or services, (3) within a 12-month

period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**NCTSA Class:** All persons within North Carolina whose: (1) North Carolina Area Code telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received a telemarketing call or text message from or on behalf of Defendant encouraging the purchase of Defendant's goods or services, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

44. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

45. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant' uniform illegal conduct.

46. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

47. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

b. Whether Defendant texted North Carolina telephone numbers on the Do Not Call Registry;

c. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

d. Whether Defendant should be held liable for violations committed on its behalf; and

e. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

48. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

49. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

50. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

51. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

52. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

53. These violations were willful or knowing.

54. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

55. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### Violations of the NCTSA, of N.C. GEN STAT. § 75-101
### (On Behalf of Plaintiff and the NCTSA Class)

56. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

57. It is a violation of the NCTSA to initiate any telephone solicitation to a North Carolina telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. N.C. GEN STAT. § 75-102(a).

58. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the NCTSA by causing telephone solicitations to be delivered to Plaintiff and members of the NCTSA Class, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

59. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on its behalf's violations of the NCTSA, N.C. GEN STAT. § 75-101 et seq., Plaintiff and members of the NCTSA class are entitled to and do seek an award of $500 in damages for the first violation, $1,000 for the second violation, and $5,000 for the third and subsequent violation, in addition to injunctive relief and attorneys' fees and costs, pursuant to N.C. GEN STAT.. § 75-105(b)(1), (b)(2), and (d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request that the Court enter judgment against Defendant for:

    A.    Certification of the Classes as alleged herein;

    B.    Appointment of Plaintiff as representative of the Classes;

    C.    Appointment of the undersigned as counsel for the Classes;

    D.    Damages to Plaintiff and members of the DNC Class pursuant to 47 U.S.C. § 227(c)(5);

    60.    Damages to Plaintiff and members of the NCTSA Class pursuant to N.C. GEN STAT.. § 75-105(b)(1), (b)(2), and (d).

    61.    Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), and N.C. GEN STAT. § 75-105(b)(1), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry;

    E.    Attorneys' fees and costs, as permitted by law, including under N.C. GEN STAT. § 75-105(d); and

    F.    Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 17th day of June, 2025.

                                                PLAINTIFF,
                                                By his attorneys,
                               By:

                                                */s/ Ryan Duffy*
                                                Ryan Duffy
                                                The Law Office of Ryan P. Duffy, PLLC

1213 W. Morehead Street
Suit 500, Unit #450
Charlotte, North Carolina 28208
ryan@ryanpduffy.com
Telephone: (704) 741-9399


/s/ *Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com